IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| AMY HARRISON, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | 1-19-CV-668-RP |
| | § | |
| KEVIN LILLY, *individually and in his official* | § | |
| *capacity*, and ROBERT SAENZ, *individually* | § | |
| *and in his official capacity*, | § | |
| | § | |
| Defendants. | § | |

### ORDER

Before the Court is Defendants Kevin Lilly ("Lilly") and Robert Saenz's ("Saenz"; together, "Defendants") motion to dismiss Plaintiff Amy Harrison's ("Harrison") first amended complaint, (Mot. Dismiss, Dkt. 15); Harrison's response in opposition, (Resp., Dkt. 16); and Defendants' reply, (Dkt. 17). After considering the parties' arguments, the record, and the relevant law, the Court grants Defendants' motion to dismiss.

### I. BACKGROUND

This is a First Amendment retaliation case. Harrison contends Defendants fired her for sending an email containing speech protected by the First Amendment. (Am. Compl., Dkt. 13, at 6). In support, Harrison alleges the following background facts.

Harrison worked for the Texas Alcoholic Beverage Commission ("TABC") from 1990 until her termination on July 12, 2017. (*Id.* at 2). At the time of her termination, Harrison served as the Director of Licensing. (*Id.*).

After Texas Governor Greg Abbott appointed Lilly to serve as Commissioner and Chairman of the TABC in May 2017, Lilly attended a TABC-required training, which included information regarding conflicts of interest. (*Id.* at 2–3). After attending the training, Lilly contacted Harrison about his stock portfolio and how the term "reasonable" should be interpreted under the conflict-of-interest provision in the Texas Government Code. (*Id.* at 3).

Harrison replied that "advising him on conflicts of interest and statutory code interpretation . . . was beyond the scope of her role as licensing director." (*Id.*). She advised Lilly to seek advice from an attorney.

Later that day, Lilly emailed a list of his personal stock holdings to Harrison and the TABC's general counsel, Emily Helm ("Helm"). (*Id.*). When Harrison received Lilly's email, she "compared the list sent by [Lilly] to entities licensed by the TABC, discovered that there was an overlap between the two and concluded that at least in her nonlegal opinion [Lilly's] stockholdings could potentially constitute violations of the Texas Alcoholic Beverage Code, the Texas Government Code, and the Texas Penal Code." (*Id.*). After determining that a conflict of interest might exist, Harrison "felt that she had a civic duty" to notify Helm and her boss, TABC executive director, Ed Swedberg ("Swedberg") regarding her concerns. (*Id.*). She also discussed the possibility of a conflict of interest with Lilly directly. (*Id.* at 3–4). Harrison alleges that her superiors did not ask her to perform a conflict check, and that "such conflict checks and analyses were never part of her job duties." (*Id.* at 3). She further alleges that her communications with Helm "were made outside of her chain of command." (*Id.* at 4).

After reviewing the information provided by Harrison, Helm emailed Lilly "outlining the reasons why his personal stock holdings might constitute violations of the statutes." (*Id.* at 3). Less than a month later, Lilly told Helm that TABC was "going in a new direction." (*Id.* at 4). Lilly gave Helm the opportunity to resign, but informed her that if she refused, he would initiate an open TABC meeting to discuss her future employment. (*Id.*). Helm resigned. (*Id.*).

That same day, Harrison learned that TABC also planned to terminate her. (*Id.*). In a meeting with Swedberg, Harrison asked about her future employment status, and Swedberg told her "not to worry about it and to enjoy the upcoming Fourth of July weekend." (*Id.*). When Harrison returned from the holiday weekend, Swedberg informed her that she "could work

through the end of August and then retire." (*Id.*). Harrison told Swedberg she had not planned on retiring at that time. (*Id.*).

The following day, Saenz told Harrison that she "needed to ask [Swedberg] to terminate her because [Swedberg's] principles were preventing him from doing so on his own." (*Id.*). Saenz also explained that Swedberg's principles would soon serve no barrier to her termination. (*Id.*) If Swedberg failed to terminate Harrison, Saenz said he would take Swedberg's position as executive director and terminate her himself because "principles don't pay [the] bills." (*Id.*).

Two days later, Harrison told Swedberg she was not going to retire because she "wanted to continue in her position and because she had done nothing to warrant termination." (*Id.* at 5). Unwilling to terminate Harrison, Swedberg resigned. (*Id.*).

As promised, Saenz replaced Swedberg as acting executive director of the TABC. (*Id.*). Saenz summoned Harrison to a meeting the very next day. (*Id.*). At the meeting, Harrison again expressed concerns about Lilly's possible conflicts of interest. (*Id.*). Saenz then informed Harrison that Lilly "wanted to go in a different direction," and fired her. (*Id.*).

Harrison now brings a claim for First Amendment retaliation pursuant to 28 U.S.C. § 1983 against Lilly and Saenz in their individual capacities and in their official capacities as TABC Chairman and TABC Acting Executive Director, respectively. (*Id.* at 1). Specifically, Harrison alleges Defendants violated the First Amendment by terminating her for notifying Helm and Swedberg about Lilly's possible conflicts of interest. (*Id.* at 6). She seeks damages against Lilly and Saenz in their individual capacities and, in the alternative, injunctive relief against Lilly and Saenz in their official capacities in the form of reinstatement and a "prospective injunction barring further retaliation by Defendants for individuals exercising their First

Amendment rights." (*Id.* at 7–8). Defendants move to dismiss Harrison's complaint for failure to state a claim and on the basis of qualified immunity. (Mot. Dismiss, Dkt. 15, at 4, 8).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a Rule 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the [plaintiffs'] grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Generally, a court ruling on a Rule 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

## III. ANALYSIS

"To establish a § 1983 claim for employment retaliation related to speech, a plaintiff-employee must show: (1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016). Defendants move to dismiss Harrison's complaint on the basis of the second element, contending that under *Garcetti*, Harrison spoke as an employee rather than as a citizen, disqualifying her from First Amendment protection. (Mot. Dismiss, Dkt. 15, at 5 (citing *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006))). And, even if the Court finds that Harrison spoke as a citizen on a matter of public concern, Defendants argue they are entitled to qualified immunity because it was not clearly established that her speech constituted protected citizen speech at the time of her termination. (*Id.* at 8). The Court begins its analysis with the threshold inquiry under *Garcetti*—whether Harrison's speech constituted citizen speech or employee speech.

For an employee's speech to qualify for First Amendment protection, she must be speaking "as a *citizen* on a matter of public concern." *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007) (quoting *Garcetti*, 547 U.S. at 418). "An employee is not speaking as a citizen—but rather in [her] role as an employee—when [she] 'make[s] statements pursuant to [her] official duties.'" *Id.* This distinction is pivotal because the First Amendment does not protect "expressions made pursuant to [an employee's] official duties," "[e]ven if the speech is of great social importance." *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 692 (5th Cir. 2007). Thus, the Court must decide whether Harrison spoke as a citizen or pursuant to her duties as the TABC Director of Licensing when she sent the conflict-of-interest email to Helm and Swedberg. *See id.* ("Under *Garcetti*, we must shift our focus from the content of the speech to the role the speaker occupied when he said it.").

Defendants contend that Harrison's speech "was mere internal workplace speech related to her job duties as TABC's Director of Licensing," and is therefore not citizen speech entitled to First Amendment protection under *Garcetti*. (Mot. Dismiss, Dkt. 15, at 1). Relying on *Williams*, Defendants argue that even if providing conflicts checks was not strictly within Harrison's regular job duties, informing others about which entities held a TABC license was "part-and-parcel" of her job as Director of Licensing. (*Id.* at 6 (citing *Williams*, 480 F.3d at 694)). Thus, say Defendants, Harrison spoke as an employee when she identified an overlap between Lilly's stock holdings and TABC licensees. (*See id.* at 6).

The Court agrees. Harrison has pleaded herself out of First Amendment protection because her allegations establish that she sent the conflict-of-interest email to Helm and Swedberg "in the course of performing [her] job as [Licensing Director]." *Williams*, 480 F.3d at 694; *see also id.* ("Activities undertaken in the course of performing one's job are activities pursuant to official duties."). In *Williams*, the Fifth Circuit considered whether an internal memorandum sent by a school athletic director to a school principal about the misuse of school athletic funds constituted employee or citizen speech. 480 F.3d at 693. The athletic director's statements "focus[ed] on his daily operations," were "part-and-parcel of his concerns about the program he ran," and "concerned matters immediately within [an] athletic director's purview—the use of funds for the school athletic teams and the related accounting procedures." *Id.* at 693–94; *see also Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 472 (5th Cir. 2014) (discussing *Williams*). While the athletic director was not required to write memoranda as part of his regular job duties, the Fifth Circuit nevertheless found the memorandum was employee speech because "[a]ctivities undertaken in the course of performing one's job are activities pursuant to official duties." *Williams*, 480 F.3d at 693.

Here, Harrison's email concerned the overlap between companies in Lilly's stock portfolio and companies holding TABC licenses, a matter "immediately within [a licensing director's] purview." (*See* Am. Compl., Dkt. 13, at 3); *Cutler*, 767 F.3d at 472. In her role as

licensing director, Harrison's job duties included "supervising and running the department in TABC tasked with regulating which persons or entities are entitled to alcoholic beverage permits in Texas." (Am. Compl., Dkt. 13, at 6). After "compar[ing] the list sent by Chairman Lilly to entities licensed by the TABC," Harrison "discovered that there was an overlap between the two" because knowing which entities hold TABC licenses is firmly "within the scope of a [licensing director's] duties." (*Id.*); *Anderson*, 845 F.3d at 595. And when she emailed her concerns about a potential conflict-of-interest to Helm and Swedberg, Harrison spoke with "special knowledge" and "greater authority" than any other citizen because she oversaw the department tasked with "regulating which persons or entities" received TABC permits. (Am. Compl., Dkt. 13, at 6); *Williams*, 480 F.3d at 694 (explaining that the athletic director wrote his memoranda about athletic funding "with special knowledge" and from the perspective of an athletic director, qualifying him to speak with greater authority than any other taxpayer).

Harrison argues that she did not speak pursuant to her official job duties because her email "was not about licensing." (Resp., Dkt. 16, at 5). Instead, Harrison contends "[t]he actual content of the speech was regarding Lilly's alleged violations," which she characterizes as "only tangentially related to licensure." (*Id.* at 6). Moreover, Harrison states that "it was not in the ordinary scope of [her] job to opine on whether the chairman was ineligible to serve." (*Id.*).

In light of *Williams*, the Court finds Harrison's attempt to disentangle the content of her speech from her job as licensing director unpersuasive. Though Harrison argues, that "[w]hether or not [Lilly] was potentially violating a conflict of interest statute has nothing to do with who gets or keeps a TABC license," and thus nothing to do with her job duties, she only "noticed that a conflict of interest might exist" because she ran the TABC licensing department. (*Id.* at 5; Am. Compl., Dkt. 13, at 3); *see also Williams*, 480 F.3d at 694. And when Harrison emailed her concerns about the overlap between Lilly's stock holdings and TABC licensees to Helm and Swedberg—and raised those concerns with Lilly directly—she spoke from a perspective that depended on and emanated from her role as TABC's licensing director. *Cf. Cutler*, 767 F.3d at

473 (finding the employee spoke as a citizen because his concerns were "entirely unrelated to his job and from a perspective that did not depend on his job as a university employee, but rather emanated from his views as a citizen").

Nevertheless, Harrison argues that she did not speak pursuant to her duties as licensing director because she "went outside her chain of command and notified the TABC General Counsel [Helm] regarding her concerns." (Am. Compl., Dkt. 13, at 3; *see also* Resp., Dkt. 16, at 5 ("Not only was the TABC general counsel Emily Helm outside of [Harrison's] 'chain of command,' but the statements made were not made pursuant to her job duties.")). But Harrison copied Swedberg on the email to Helm, thus raising her concerns "up the chain of command" to her direct supervisor. (Am. Compl., Dkt. 13, at 3); *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008). The Fifth Circuit has distinguished instances in which a public employee "raises complaints or concerns up the chain of command at [her] workplace about [her] job duties" from those in which the employee "takes [her] job concerns to persons outside the work place," explaining that the former is "speech undertaken in the course of performing [the employee's] job" while the latter external communications "are ordinarily not made as an employee, but as a citizen." *Davis*, 518 F.3d at 313. And while Helm, as general counsel, may have been outside Harrison's chain of command, Harrison never took her concerns "to persons outside the work place"; instead, she raised all concerns internally, in response to a direct inquiry from Lilly, and pursuant to her role as TABC's licensing director. (*See* Am. Compl., Dkt. 13, at 3–4); *see also Davis*, 518 F.3d at 315.

Harrison's reliance on *Charles v. Grief*, 522 F.3d 508, 512 (5th Cir. 2008), is likewise misplaced. In *Charles*, the Fifth Circuit found that a member of the Texas Lottery Commission spoke as a citizen when he emailed members of the Texas Legislature as well as high-ranking Lottery Commission officials raising concerns about racial discrimination and retaliation against minority Lottery Commission-employees. *Id.*; *see also Cutler*, 767 F.3d at 472 (discussing *Charles*). This conclusion hinged on the fact that the employee's speech "was not made in the course of

8

performing or fulfilling his job responsibilities, was not even indirectly related to his job, and was not made to higher-ups in his organization . . . but was communicated directly to elected representatives of the people." *Charles*, 522 F.3d at 514. Instead, the employee's emails "concerned topics far removed from the realm of—and unrelated to—any conceivable job duties." *Id.* Accordingly, there was "no *Garcetti*-like nexus between [the employee's] work and the malfeasance that he sought to expose to the cognizant public authorities." *Id.* Harrison's email, by contrast, was sent only to "higher-ups" within her organization, including her direct supervisor, and concerned the overlap between Lilly's stock holdings and entities holding TABC permits, hardly a topic "far removed from the realm of" her job duties as TABC licensing director. *Id.*; (*see also* Am. Compl., Dkt. 13, at 3–4).

Finally, Harrison contends that if her speech is classified as a matter of public concern, "Defendants are prohibited from terminating her for that speech." (Am. Compl., Dkt. 16, at 2). She then argues that "[t]here is perhaps no subset of 'matters of public concern' more important than bringing official misconduct to light," and her conflict-of-interest email did just that. (*Id.*). But this argument puts the cart before the horse. Under *Garcetti*, the Court's "first task" in determining whether Harrison's speech is constitutionally protected "is to determine whether [Harrison's] speech was part of her official duties, that is whether she spoke as a citizen or as part of her public job." *Davis*, 518 F.3d at 312; *see also Charles*, 522 F.3d at 512 ("Before proceeding to examine the substance of [the employee's] speech, we must first focus on his role when he uttered it."). Having found that Harrison spoke pursuant to her role as TABC licensing director, her speech is unprotected employee speech under *Garcetti* and the Court need not consider whether she spoke on a matter of public concern.

The Court ultimately finds that Harrison's allegations show that her email was written in the course of performing her job as TABC licensing director, disqualifying the speech within it from First Amendment protection. Because Harrison fails to satisfy this threshold inquiry under

*Garcetti*, she has failed to state a claim for First Amendment retaliation and Defendants are entitled to dismissal.[1]

## IV. LEAVE TO AMEND

In her response, Harrison asks the Court to grant her leave to amend her complaint for a second time in the event the Court finds her pleading insufficient. (Resp., Dkt. 16, at 9). Defendants object to this request because Harrison has "already availed herself of the opportunity to re-plead" and in making this request, Defendants argue Harrison "is effectively asking the Court to issue an advisory opinion on where the problems in her pleading are, so that she can fix them." (Reply, Dkt. 17, at 3).

The Federal Rules of Civil Procedure permit a party to amend its pleading "once as a matter of course," but afterwards "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1)–(2). "The court should freely give leave when justice so requires." *Id.* at (a)(2). Rule 15(a) "requires the trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." *Lyn–Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002). But leave to amend "is by no means automatic." *Davis v. United States*, 961 F.2d 53, 57 (5th Cir. 1991). A district court may deny leave to amend if it has a "substantial reason" to do so. *Lyn–Lea Travel Corp.*, 283 F.3d at 286.

Although the Fifth Circuit "has not provided strict guidelines as to what constitutes a sufficient request for leave to amend, it is clear that *some* specificity is required." *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016) (citing *U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d

---

[1] Because the Court has concluded that Harrison's claims should be dismissed under Rule 12(b)(6) for failure to state a First Amendment retaliation claim, it does not reach Defendants' qualified immunity defense. *See, e.g., Jackson v. United States*, No. 4:15-CV-696-O, 2019 WL 974667, at *2 n.4 (N.D. Tex. Feb. 27, 2019) (granting motion to dismiss for failure to state a claim and accordingly not reaching the qualified immunity arguments); *Causer v. Ard*, No. CV 18-779-SDD-RLB, 2019 WL 3849155, at *5 (M.D. La. Aug. 15, 2019) ("The Court does not reach the qualified immunity analysis on this motion, because it finds that all of Plaintiffs' claims pursuant to 42 U.S.C. § 1983 shall be dismissed for failure to meet the pleading standard required to survive a Rule 12(b)(6) motion to dismiss.").

325, 331 (5th Cir. 2003)). For instance, the party requesting amendment must "set forth with particularity the grounds for the amendment and the relief sought." *Doe*, 343 F.3d at 331. And while a formal motion requesting amendment is not required, a "bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought, *cf.* Fed. Civ. R. P. 7(b)—does not constitute a motion within the contemplation of Rule 15(a)." *Id.*

Here, Harrison "requests leave to amend her complaint in order to allege further facts in support of [her] complaint" "[i]n the event the Court . . . believes that additional facts are necessary." (Resp., Dkt. 16, at 9). "While this statement, in its loosest sense, is a request to amend, it offers no grounds on which an amendment should be permitted." *Doe*, 343 F.3d at 331. Harrison did not attach a proposed amended complaint to her response, and—in the nearly eight months that Defendants' motion to dismiss has been pending—she never filed a formal motion requesting amendment. (*See* Resp., Dkt. 16, at 9; Mot. Dismiss, Dkt. 15 (filed October 18, 2019)). Most importantly, she has not suggested any additional facts that could bring her speech within the ambit of citizen speech and cure the pleading defects raised by Defendants in their motion to dismiss. (*See* Resp., Dkt. 16, at 9). Without a proposed amendment or proffered grounds for why the Court should permit amendment, the Court will deny Harrison's request. *See Goldstein v. MCI WorldCom*, 340 F.3d 238, 254–55 (5th Cir. 2003) (affirming denial of motion for leave to amend where the request merely stated: "Should this Court find that the Complaint is insufficient in any way, however, plaintiffs respectfully request leave to amend.").

## IV. CONCLUSION

For the reasons stated, **IT IS ORDERED** that Defendants' motion to dismiss, (Dkt. 15), is **GRANTED**. Harrison's claims against Defendants are **DISMISSED** and her request for leave to amend, (*see* Resp., Dkt. 16, at 9), is **DENIED**. The Court will enter final judgment in a separate order.

**SIGNED** on July 23, 2020.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE